IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NICOLITA MONTOYA,

        Plaintiff,

v.

                              CIV 18-0590 SCY/KBM

LOYA INSURANCE COMPANY, a foreign
corporation during business in New Mexico,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant Loya Insurance Company's Motion for Protective Order (*Doc. 37*), filed November 16, 2018. Having reviewed the submissions of the parties and the relevant law, the Court will grant Defendant's Motion for Protective Order in part.

**I.    BACKGROUND**

On October 3, 2016, Plaintiff Nicolita Montoya was involved in a motor vehicle accident with an unknown driver. Following the accident, Plaintiff made a claim with Defendant Loya Insurance Company ("Loya") for uninsured motorist ("UM") coverage. Loya assigned Plaintiff 100 percent fault for the accident. *See Doc. 37-1* at 2. Another claim was opened for this same accident, but under the wrong policy, creating some confusion between Plaintiff and Loya. Loya denied coverage on that claim as being outside the policy period.

On February 22, 2017, Plaintiff filed suit for UM benefits and punitive damages ("the underlying lawsuit") in state court. *Doc. 37-2*. The case proceeded to trial, and on

1

January 25, 2018, the jury found the UM driver to be 100 percent at fault and awarded damages to Plaintiff. Plaintiff filed the current lawsuit in state court on May 17, 2018, alleging insurance breach of contract, bad faith, negligence, and unfair practices for Loya's failure to pay the claim, including paying the jury verdict, and for Loya's handling of the claim through the underlying lawsuit. Loya removed the case to this federal district court on June 25, 2018 based upon diversity of citizenship. It was only on or about June 29, 2018 – after removal – that Loya paid the jury verdict's award to Plaintiff.

In the instant motion, Loya seeks a protective order to prohibit discovery of Loya employees' conduct and communications during the underlying lawsuit, arguing such information is protected by work product and attorney-client privilege. Loya also seeks to shield the production of materials related to a presentation on bad faith by current defense counsel to Loya adjusters as protected by attorney-client privilege.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defenses and proportional to the needs of the case . . . ." Yet, a court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). "The good cause standard of Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quotations omitted). The burden is on the party seeking the protective order to show good cause exists for one. *Sedillo Elec. v. Colo.*

2

*Cas. Ins. Co.*, No CIV 15-1172 RB/WPL, 2017 WL 3600729, at *1 (D.N.M. Mar. 9, 2017) (quotation omitted).

In this diversity case, state law governs attorney-client privilege. *Valencia v. Colo. Cas. Ins. Co.*, No. CIV 06-1259 JB/RHS, 2007 WL 5685148, at *6 (D.N.M. Dec. 6, 2007). Under New Mexico law, the elements of attorney-client privilege are: "(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 14, 175 P.3d 309 (citing Rule 11-503(A)(4) NMRA). Specifically, "[i]n order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client." *Am. Auto Ins. Co. v. First Mercury Ins. Co.*, No 13-CV-0439 MCA/LF, 2016 WL 7395219, at *2 (D.N.M. Oct. 22, 2016) (citing *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998)). There is no blanket privilege covering all attorney-client communications; rather, "[t]he party asserting privilege must show that each document or communication qualifies for privilege." *Id.* (citing *Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 25).

The work-product privilege, on the other hand, protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives unless the materials are otherwise discoverable and the party seeking the materials shows substantial need." *Id.* at *3 (citing Fed. R. Civ. P. 26(b)(3)). "But even if a court orders discovery of such materials, the court 'must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Id.* (citing Fed. R. Civ.

3

P. 26(b)(3)(B)). The work-product doctrine does not protect facts contained within a work product or facts about the creation of a work product. *Id*. Rather, it is "intended only to guard against divulging the attorney's strategies and legal impressions . . . ." *Id*.

### III. ANALYSIS

#### a. Conduct and Communications During the Underlying Lawsuit

Plaintiff seeks to depose Loya litigation adjusters and employees involved in the litigation of the underlying lawsuit. Specifically, Plaintiff seeks to depose Vice President of Claims Ed Meza, a Loya employee who attended the underlying trial, and Loya litigation adjusters Genaro Rojas and Jose Balanos. Plaintiff also seeks production of written reports by Loya's UM counsel, Mr. Grossman. Loya responds that the handling of Plaintiff's claim during the underlying lawsuit is protected from disclosure by the work product doctrine and attorney-client privilege.

Loya first argues that discovery of its employees' conduct during the underlying UM lawsuit is irrelevant and disproportionate to the needs of the current bad faith lawsuit. The Tenth Circuit has explained that "[i]n general, an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage." *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F. 3d 335, 340 (10th Cir. 1995) (citation omitted). As such, "once litigation has commenced, the actions taken in its defense are not . . . probative of whether [an insurer] in bad faith denied the contractual lawsuit." *Id*. However, the court in *Timberlake* further held that in some rare cases, evidence of an insurer's litigation conduct may be admissible to show bad faith. *Id.* at 341. Similarly, Judge Lynch surmised that New Mexico courts would allow evidence of litigation conduct "to be admissible as evidence of bad faith in rare cases

involving extraordinary facts." *Sinclair v. Zurich Am. Ins. Co.*, 129 F. Supp. 3d 1252, 1258 (D.N.M. 2015).

Here, as explained in *Timberlake*, litigation conduct by Loya adjusters and employees during the underlying litigation is not relevant to whether Loya acted in bad faith by failing to pay Plaintiff's claim. While Plaintiff also alleges Loya acted in bad faith in its handling of the underlying lawsuit, "[a]llowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims." *Timberlake Constr. Co.*, 71 F. 3d at 341. Further, there is no evidence that this is a rare case or that an extraordinary circumstance exists to make the conduct of Loya employees during the underlying lawsuit relevant. Accordingly, the litigation conduct of Loya employees is "inadmissible as it lacks probative value and carries a high risk of prejudice." *Id.* (citing Fed. R. Evid. 401, 403).

Even if the litigation conduct of Loya employees were relevant to Plaintiff's bad faith claims, the Court finds that the conduct is protected by work product and attorney-client privilege. There is no protection for an insurer's investigation before it makes a final decision on a claim. *See Sedillo Elec.*, 2017 WL 3600729, at *3 ("Fed. R. Civ. P. 26(b)(3) requires that a document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produced after litigation was reasonably anticipated." (citing *Lindley v. Life Ins. Co. of Am.*, 267 F.R.D. 382, 399 (N.D. Okla. 2010))); *Barela v. Safeco Ins. Co. of Am.*, No. 13cv1084 SMV/SCY, 2014 WL 11497826, at * 4 (D.N.M. Aug. 22, 2014) ("[C]ourts have routinely

applied a rebuttable presumption that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made as to that claim." (quotations omitted)). The parties do not appear to dispute this presumption, as Plaintiff has already taken the depositions of the Loya adjusters who initially handled the claim and made the liability determination.

On the other hand, an insurer's communications and documents produced after it has made a final decision on a claim are presumed to be protected. *Sedillo Elec.*, 2017 WL 3600729, at *3 (quoting *Lindley*, 267 F.R.D. at 399). An insurer has no continuing duty to investigate after it has denied a claim, unless it receives new information. *Id.* at *4-5. "As such, any claims adjustment after the claim was denied was not conducted in the ordinary course of business and is protected by attorney-client privilege and the work product doctrine." *Id.* at *5. The determining line is not when a lawsuit is filed. Indeed, an investigative file produced after a lawsuit is filed, but before the insurer has made a final decision on the claim, is presumed created in the ordinary course of business. *See id.* at * 4-5; *Barela*, 2014 WL 11497826, at *5. But once an insurer denies a claim, its continuing conduct is presumed to be in anticipation of litigation and is therefore presumed protected.

Here, according to Loya, its adjuster determined that Plaintiff was 100 percent at fault for the accident on October 15, 2016. *See Doc. 37-1*. Plaintiff then filed the underlying lawsuit on February 22, 2017. *Doc. 37-2*. Yet, Plaintiff contends that "while Loya asserts that it denied [her] claim prior to the filing of a lawsuit, Loya never sent a denial letter to Plaintiff and continued to correspond with Plaintiff's counsel regarding the claim." *Doc. 40* at 5-6. Indeed, Loya adjuster Marivel Boneo testified during his

6

deposition that he did not send Plaintiff a no-coverage letter because the claim was transferred to a UM adjuster after he determined liability. *Doc. 37-1* at 2. However, he also testified that he called Plaintiff to inform her of Loya's liability determination. *Id.*

Plaintiff cites to *Country Life Insurance Co. v. St. Paul Surplus Lines Insurance Co.*, from the Central District of Illinois, for the proposition that "[u]ntil the decision to deny coverage is made and that decision is communicated to the insured, documents and communications are not protected by work product privilege." No. 03-1224, 2005 WL 3690565, at * 7 (C.D. Ill. Jan. 31, 2005). Yet in *Sedillo Electric*, Judge Lynch of this District examined the privilege by looking at whether an insurer prepared information in the ordinary course of business or in anticipation of litigation. 2017 WL 3600729, at *3-4. Whether Loya adjusters sent a letter to Plaintiff or not, once they determined liability they were no longer making factual inquiries into the claim in the ordinary course of business. Their continuing conduct, such as that during the underlying lawsuit, is therefore presumed to be in anticipation of litigation. And while Loya had a continuing duty, in the ordinary course of its business, to reassess its initial liability determination if it received new information, there is no evidence in this case that Loya received new information during the underlying lawsuit that would have impacted its initial liability determination. *See id.* at *4.

Plaintiff specifically seeks to depose litigation adjusters Genaro Rojas and Jose Balanos concerning their review of Plaintiff's discovery responses and her deposition. Yet, the Court sees no evidence to overcome the presumption that this conduct during the underlying lawsuit was in anticipation of litigation. Accordingly, this Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal

theories of a party's attorney or other representative concerning the litigation.'" *Am. Auto Ins. Co.*, 2016 WL 7395219, at *3.

Plaintiff also seeks production of written reports by Loya's UM counsel, Mr. Grossman, written during the underlying litigation. Plaintiff argues that counsel was working as a claims adjuster, so the attorney-client privilege does not apply. However, the cases cited by Plaintiff deal with attorneys acting as claim adjusters in the ordinary course of business to reach a final decision on a claim. *See Doc. 40* at 4-5. Here, Mr. Grossman entered as UM counsel after Loya made its final decision on the claim and his work is therefore presumed protected as in anticipation of litigation. The Court again finds no evidence to overcome this presumption.

Plaintiff lastly seeks to depose Loya adjuster Ed Meza regarding payment of the jury verdict. Loya acknowledges that it has "asserted an advice of counsel defense as to Plaintiff's claim that Loya unreasonably delayed payment of the jury verdict," and therefore "understands that it must provide discovery, including communications from counsel, on this issue." *Doc. 46* at 9. However, it explains that Mr. Meza was not responsible for payment of the jury verdict and his "knowledge and involvement with regard to the payment of the jury verdict is limited to conversations with . . . counsel after the bad faith claim was filed." *Doc. 46* at 9. Rather, Mr. Bolanos was the adjuster assigned to the claim at the time of the jury verdict, and Loya agrees to his deposition on the limited topic of the paying the jury verdict. Accordingly, the Court will allow Plaintiff to depose Mr. Bolanos on the limited topic of paying the jury verdict. For the reasons discussed above, the Court will prohibit the deposition of Mr. Meza on his litigation conduct and communications.

### b. Defense Counsel's Presentation on Bad Faith

Plaintiff seeks production of a PowerPoint presentation which she alleges Loya used to train claim handlers. Loya requests a protective order, asserting that the materials are protected by attorney-client privilege because defense counsel in this case gave the presentation to Loya adjusters with "legal advice on bad faith standards in New Mexico and avoiding bad faith claims." *Doc. 37* at 11.

Plaintiff first asserts that Loya waived any objection it had to production of the presentation materials because it did not initially offer an objection. Loya, on the other hand, asserts that Plaintiff did not actually request the presentation materials. The interrogatory at issue reads, "Identify all protocols, guidelines, standards or other documents used to train claims handlers adjusting New Mexico UM/UIM claims." *Doc. 40-2* at 2. Loya responded with a variety of objections, including that the interrogatory was unreasonably vague. *Id.* at 2-3. It went on to answer that it "will supplement this Interrogatory with responsive information upon the entry of an appropriate confidentiality order and clarification of the information being sought." *Id.* at 3. The Court does not view this response as a waiver but a request for clarification.

In her Response, Plaintiff complains that "Loya has also not presented any information here that would lead one to believe the presentation was *not* provided to insurance adjusters outside of Loya." *Doc. 40* at 6. The Court finds that Defendant has adequately addressed the issue of the confidential nature of the presentation in the Reply where its counsel, as an officer of the Court, affirmatively represents that "[t]he subject materials were created for and presented only to Loya." *Doc. 46* at 10.

Plaintiff also asserts that the presentation materials are not protected because they are not specific to a claim, but a general training to litigation adjusters. Loya counters that the materials "consist of legal advice on how Loya, counsel's client, should handle first and third-party bad faith claims." *Doc. 46* at 10. The Court agrees with Loya that while the presentation may not have been specific to one claim, it was still a communication between an attorney and her client for the purpose of facilitating the attorney's rendition of professional legal services to the client. *See Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 14. However, the Court finds that it should review the presentation materials to assure that they do not also contain non-protected information or advice relating to business matters or management decisions. "[C]ounsel's communications regarding business matters, management decisions, and business advice, which neither solicit or predominantly deliver legal advice, are not privileged." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007).

Wherefore,

IT IS HEREBY ORDERED that Defendant's Motion for Protective Order (*Doc. 37*) is **granted as follows:**

**1)** Plaintiff may depose Jose Balanos on the limited topic of paying the jury verdict;

**2)** Plaintiff is prohibited from deposing Ed Meza, Genaro Rojas, or Jose Balanos regarding litigation conduct during the underlying lawsuit;

**3)** Defendant Loya is not required to produce Mr. Grossman's reports written during the underlying lawsuit; and

**4)** By Monday, February 11, 2019, Defendant Loya shall produce to the Court for its *in camera* review the materials from its counsel's presentation to Loya adjusters on handling bad faith claims.

_____
UNITED STATES MAGISTRATE JUDGE

11