IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICOLITA MONTOYA,

    Plaintiff,

    v.                                        Civ. No. 18-590 SCY/KBM

LOYA INSURANCE COMPANY, a
foreign corporation doing business in
New Mexico,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Plaintiff's Motion For Partial Summary Judgment Regarding Bad Faith And Violations Of The Unfair Claims Practices Act, filed July 11, 2018. Doc. 8. Defendant Loya Insurance Company filed a response in opposition on August 8, 2018. Doc. 17. Plaintiff filed a reply on September 11, 2018. Doc. 28. The Court orders that the Motion be denied for the reasons explained below.

## BACKGROUND

A.    <u>Procedural History</u>

Plaintiff filed this suit on May 17, 2018 in state court. Doc. 1-1 ("Compl."). On June 25, 2018, Defendant removed the case to federal court. Doc. 1. In its Notice of Removal, Defendant alleged the existence of subject-matter jurisdiction under 28 U.S.C. § 1332. *Id.* at 2. Plaintiff did not move to remand, and the Court finds that the allegations in the Notice of Removal are sufficient to establish this Court's subject-matter jurisdiction.

In her Complaint, Plaintiff contends that she was in a motor vehicle accident on October 3, 2016. Compl. ¶ 8. The accident was the fault of the other driver, who fled the scene. Compl.

1

¶¶ 9-10. Plaintiff made a claim for Uninsured Insurance Benefits with her auto insurance company, Defendant Loya. Compl. ¶ 11. Defendant informed Plaintiff on November 1, 2016 that there was no coverage for the accident because it was outside of the policy period. Compl. ¶ 16. Defendant took a recorded statement from Plaintiff but lost it. Compl. ¶¶ 18-19. Plaintiff was forced to file suit against Defendant in state court in February 22, 2017. Compl. ¶ 20. On January 25, 2018, the jury rendered a verdict in favor of Plaintiff against Defendant in the amount of $23,742.82. Compl. ¶¶ 45-46. Defendant continued to delay paying the claim even after the verdict. Compl. ¶ 51. The failure to pay caused Plaintiff financial hardship. Compl. ¶ 32. The Complaint brings claims for Breach of Contract, Insurance Bad Faith, Unfair Insurance Claim Practices, and Unfair Trade Practices. Doc. 1-1 at 5-9.

On July 11, 2018, Plaintiff filed the present Motion for Partial Summary Judgment. Doc. 8. Defendant opposed it, arguing in part that it needed further discovery in order to fully respond to the motion. Docs. 17 & 17-5. Meanwhile, the Court set scheduling deadlines and the parties have been conducting discovery. On November 16, 2018, Defendant filed a motion for a protective order, seeking to prohibit discovery of Defendant's employees' conduct and communications during the underlying lawsuit, and to shield the production of materials related to a presentation on bad faith by current defense counsel to Defendant's adjusters. Doc. 37. The Court granted the motion in part. It found that "litigation conduct by Loya adjusters and employees during the underlying litigation is not relevant to whether Loya acted in bad faith by failing to pay Plaintiff's claim" and such evidence is therefore excluded from the scope of discovery. Doc. 53 at 5. It also found the requested material to be protected by attorney-client privilege and, after *in camera* review, ordered that the presentation on bad faith need not be disclosed. Doc. 53 at 6-9 & Doc. 56.

B. Motion for Partial Summary Judgment

At issue in Plaintiff's Motion are two auto insurance policies Plaintiff purchased from Defendant:

- Policy No. 62-604581180, effective from August 11, 2016 to February 11, 2016. *See* Doc. 8 at 2 ¶¶ 1-2 and Doc. 17 at 2 ¶¶ 1-2 (more or less agreeing on the existence of this policy). This policy will be referred to as "the 2016 Policy."

- Policy No. 62-385323290, effective from April 2, 2015 to October 2, 2015 but canceled on June 2, 2015. *See* Doc. 17-2. This policy will be referred to as "the 2015 Policy."

The parties agree that, on October 3, 2016, Plaintiff was in a motor vehicle collision involving an unknown driver who fled the scene, and Plaintiff's property was damaged as a result. Doc. 8 at 2 ¶¶ 4-5; Doc. 17 at 2 ¶¶ 4-5. Plaintiff made an Uninsured Motorist Insurance ("UMI") claim under her auto insurance and reported the claim to her insurer. Doc. 8 at 3 ¶ 6; Doc. 17 at 3 ¶ 6.

From here, the parties' stories differ slightly. Plaintiff asserts that Defendant denied the claim on the basis that "the damages claimed did not happen within the policy period." Doc. 8 at 3 ¶ 7. Plaintiff hired an attorney and filed suit, but Defendant continued to deny the claim as being outside the coverage period. *Id.* at 3 ¶¶ 8-9. Defendant attended a mediation and made settlement offers. *Id.* at 3 ¶ 9. The case went to trial and the jury found Plaintiff 0% at fault and awarded $23,742.82 in damages on January 25, 2018. *Id.* at 3 ¶¶ 11-13. Defendant did not pay the claim until June 29, 2018, despite multiple requests for payment from Plaintiff. *Id.* at 4 ¶¶ 16-19.

On the other hand, Defendant maintains that Plaintiff first opened a claim under the 2016 Policy (the "2016 Policy Claim"). Doc. 17 at 5 ¶ 1. Defendant informed Plaintiff she had UMI coverage on her policy. *Id.* at 6 ¶ 5. Defendant never denied the 2016 Policy Claim. *Id.* at 6 ¶ 4. Defendant was in communication with Plaintiff about the 2016 Policy Claim throughout

3

mediation and trial. *Id.* at 7-8 ¶¶ 14, 17. Defendant asserts that on November 1, 2016, for reasons unknown, Plaintiff opened a second claim for the car accident under the 2015 Policy (the "2015 Policy Claim"). *Id.* at 6 ¶ 6. Because the 2015 Policy did not cover the 2016 accident, Defendant denied the 2015 Policy Claim. *Id.* at 7 ¶¶ 9-10. After the verdict in Plaintiff's favor was rendered, Defendant delayed payment due to advice of counsel pending the resolution of disputed issues regarding costs, pre- and post-judgment interest and a lien from First Recovery Group. *Id.* at 8 ¶ 18. Defendant disputes that Plaintiff made multiple requests for payment between the date of the verdict and the date of payment. *Id.* at 4 ¶ 16.

Based on Plaintiff's version of events, she filed the present Motion for Partial Summary Judgment on liability.

## **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v.*

*Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

This case presents the issue of whether an insurance company failed to pay on a coverage dispute in bad faith. "[I]n New Mexico, an insurer acts in bad faith when it denies a first party claim for reasons that are frivolous or unfounded." *Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 11, 293 P.3d 954, 958 (citing *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶¶ 3, 18, 135 N.M. 106). "'Unfounded' is defined not as 'erroneous' or 'incorrect,' but rather the failure to exercise care for the interests of the insured, an arbitrary or baseless refusal to pay, lacking support in the language of the policy or the circumstances of the claim. *Id.* (quoting *Sloan*, 2004-NMSC-004, ¶ 18) (alterations omitted). "'Unfounded' is synonymous with 'frivolous.'" *Id.* (quoting *Sloan*, 2004-NMSC-004, ¶ 18).

"'An insurance company is justified in taking reasonable time and measures necessary to establish which party is entitled to the proceeds.'" *Id.* ¶ 13 (quoting *State Farm Gen. Ins. Co. v. Clifton*, 86 N.M. 757, 759, 527 P.2d 798, 800 (1974)) (alterations omitted). The insurer "'must act reasonably under the circumstance to conduct a timely and fair investigation and evaluation.'" *Id.* ¶ 13 (quoting NMRA Civ. UJI 13-1702) (alterations omitted). "To be liable for bad faith, the insurer must lack a founded belief, and the founded belief is absent when the insurer fails to undertake an investigation adequate to determine whether its position is tenable." *Id.*

## DISCUSSION

Plaintiff argues that she is entitled to summary judgment because (1) Defendant acted in bad faith in denying her claim as being outside the policy limits; (2) Defendant acted in bad faith in delaying payment on the claim for five months after the jury verdict was returned; and (3)

5

Defendant's general business practices violate the New Mexico Unfair Claims Practices Act ("UPCA"). The Court will address each argument in turn.

> A. The Undisputed Facts Do Not Show that Defendant Committed Bad Faith in Denying the 2015 Policy Claim as Outside the Policy Coverage.

Plaintiff's first argument in support of her motion is very simple: Plaintiff had coverage for an accident in 2016, but Defendant denied her claim as falling outside the time period of her coverage which did in fact extend to 2016. Doc. 8 at 5. Plaintiff argues that, under New Mexico law, "once an insurer has declined to provide coverage on one ground, the insurer will not be allowed to raise another ground as a defense to coverage . . . ." Doc. 8 at 6 (quoting *Padilla v. Western Heritage Ins. Co.*, No. CIV 03-695, Doc. 62 (D.N.M. May 24, 2004) (Black, J.)). This is known as the mend-the-hold doctrine. *Id.* According to Plaintiff, Defendant cannot deny the claim as falling outside a policy period, and then change its mind in this bad-faith litigation and state that the claim was denied because the adjustor found Plaintiff at fault for the accident.[1]

In response, Defendant explains that it denied the 2015 Policy Claim as falling outside the policy coverage, and never denied the 2016 Policy Claim. Doc. 17 at 9-10. In her reply brief, Plaintiff objects to the evidence Defendant relies upon in explaining the existence of the two different claims and two different policies. Doc. 28 at 1-3. Defendant relies for most of its factual narrative on the affidavit of Christopher Bennett, the Casualty Department Manager of Loya Insurance Group. Doc. 17-1. Plaintiff objects to the affidavit as conclusory and based on hearsay rather than personal knowledge. *Id.*

---

[1] Plaintiff does not discuss the remainder of Judge Black's opinion, in which Judge Black questions whether this rule applies to coverage-dispute cases, as opposed to cases concerning an insurer's duty to defend. *Padilla*, Doc. 62 at 6-7. *Padilla* was a duty-to-defend case, and the present case relates to a coverage dispute. The Court does not resolve these questions, as it finds the undisputed facts would not support the application of the mend-the-hold rule as described by Plaintiff.

"At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (internal quotation marks omitted). "Parties may, for example, submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form." *Id.* "Nonetheless, the content or substance of the evidence must be admissible." *Id.* (internal quotation marks omitted). "Thus, for example, at summary judgment courts should disregard inadmissible hearsay statements contained in affidavits, as those statements could not be presented at trial in any form." *Id.*

Mr. Bennett's statements describing the existence of two different claims and two different policies are admissible. Mr. Bennet's affidavit contains sufficient material to establish the hearsay exception under the business records rule. "Rule 803(6) of the Federal Rules of Evidence provides an exception to the hearsay rule for business records if they are 'kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum [record].'" *United States v. Gwathney*, 465 F.3d 1133, 1140 (10th Cir. 2006).[2] To satisfy Rule 803(6), "a document must (1) have been prepared in the normal course of business; (2) have been made at or near the time of the events it records; (3) be based on the personal knowledge of the entrant or of an informant who had a business duty to transmit the information to the entrant; and (4) not have involved sources, methods, or circumstances indicating a lack of trustworthiness." *Id*. at 1140-41 (internal quotation marks and alteration omitted).

---

[2] The business-records exceptions in the federal and state rules of evidence are virtually identical. *See* Fed. R. Evid. 803(6); N.M.R.A. 11-803(6). The Court thus need not resolve the question of whether state or federal evidentiary law governs in this diversity case.

7

The recitations in Mr. Bennett's affidavit track these elements. He avers that he is "familiar with Loya's . . . procedures for maintaining and documenting claim files for uninsured motorists (UM) claims." Doc. 17-1 ¶ 4. "Claims representatives record notes in the Web Notes and AS400 programs as a part of the usual and ordinary course of business during the claims handling process." *Id.* ¶ 5. "The Web Notes and AS400 notes are made by claims representatives with knowledge of the event described therein, at or near the time of the event described therein." *Id.* ¶ 7. "Letters sent to insureds, claimants and/or claimants' attorneys and letters received from insureds, claimants and/or claimants' attorneys are kept in the electronic 'claim file' as a part of the usual and ordinary course of business during the claims handling process." *Id.* ¶ 8.

These assertions are not necessarily conclusory just because they are formulaic. Mr. Bennett's affidavit sufficiently explains the existence and operation of the business-records system he used to gain knowledge about this case. In addition, Defendant has presented other evidence demonstrating that there were two different claims and two different policies. *See* Doc. 17-2 (copy of the 2015 Policy); Doc. 17-3 (letter issued under the 2016 Policy acknowledging UMI coverage); Doc. 17-4 (letter opening the 2015 Policy Claim); Doc. 17-6 (letter from Plaintiff's counsel referencing the 2015 Policy Claim)

The Court does not reach the balance of Plaintiff's objections to Mr. Bennett's affidavits, because the existence of the two different claims by itself creates a dispute of fact that forecloses summary judgment. The Court need not reach the parties' contentions as to how or why two different claims came into existence in order to reject Plaintiff's argument. Defendant presented material evidence establishing a dispute of fact over whether Defendant impermissibly changed its reasons for denying the claim under the mend-the-hold doctrine. A rationale trier of fact could

conclude that Defendant denied the 2015 Policy Claim as outside the policy limits, and never denied the 2016 Policy Claim. Plaintiff's Motion does not allege that it was bad faith for Defendant to close the 2015 claim and keep open the 2016 claim for the same accident. Nor does it argue that Defendant acted in bad faith by failing to reasonably resolve the 2016 Policy Claim before the trial related to that claim.

Instead, Plaintiff raises these arguments for the first time in reply. Plaintiff's reply argues that it is bad faith for Defendant to blame Plaintiff for the confusion created by the existence of two different claims. Doc. 28 at 4. Plaintiff relies on documents Defendant "recently produced" in discovery to argue that the confusion was the fault of Defendant's claim handling processes, and that Defendant should have explained the confusion to Plaintiff. *Id.* at 5. Instead, Plaintiff asserts, it was only due to the persistence of Plaintiff's trial counsel in the underlying lawsuit that the claim went forward at all. *Id.*

When "new reasons and evidence" are presented in a reply brief in support of summary judgment, a district court may either "permit[] a surreply or . . . refrain[] from relying on any new material contained in the reply brief." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998). Defendant did not request a surreply. The parties are still actively engaged in discovery, and yet more evidence may come to light during that process. The Court therefore elects to refrain from relying on Plaintiff's new arguments and evidence. At this point, the Court rejects the arguments Plaintiff presented in her opening brief related to Defendant's denial of the 2015 claim and denies her motion for partial summary judgment on this claim. Although it is not the Court's general practice to allow multiple motions for summary judgment on the same issue, because the Court did not consider the evidence Plaintiff presented in her Reply, the Court will allow Plaintiff to renew this motion at the close of discovery if she so chooses.

B.  Whether Defendant Committed Bad Faith in Delaying Payment Is a Question for the Jury.

Plaintiff next argues that Defendant's failure to pay the claim immediately after the jury returned its verdict on January 25, 2018, constitutes bad faith. Doc. 8 at 7-8. Defendant responds that it delayed payment because "[w]ithout a judgment, there is no contractual obligation to pay." Doc. 17 at 13. Defendant was waiting on its counsel to instruct it "as to how, when and the amount to pay" in light of "ongoing issues regarding costs and pre- and post-judgment interest still being litigated" and the resolution of a medical services lien. *Id.*

In support of its argument, Defendant relies on *State Farm Gen. Ins. Co. v. Clifton*, in which the New Mexico Supreme Court held that "[i]n order to recover damages in a tort action [as the result of a delay in payment], there must be evidence of bad faith and/or a scheme to obtain some fraudulent purpose." 1974-NMSC-081, ¶ 8, 86 N.M. 757, 759. The decision in *Clifton*, however, was quite fact-specific. In that case, the Court found that "[t]he actions of the adjustor for the Company seem natural in the light of several claimants to the proceeds, the absence of [one claimant] after his claimed interest in a portion thereof, and the failure to file the substantiating documents with the county clerk." *Id.* In other words, the delay was partially caused by a dispute among the claimants to the proceeds in that case, including the party suing the insurance company for delay. *Id.* ¶¶ 1-3, 7. Defendant's asserted reasons for delay in this case—advice of counsel and the existence of a lien—are significantly less substantial than the reasons for delay presented in *Clifton*. Defendant does not explain why it could not have, for example, tendered the requested amount in exchange for an indemnification agreement placing the responsibility for resolving the lien on Plaintiff.

*Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1147 (D.N.M. 2010), is likewise distinguishable. In *Hauff*, Judge Kelly found that "taking just over three months to evaluate a claim and tender a

settlement offer was 'timely as a matter of law' and 'certainly not in bad faith.'" *Id.* (quoting *Reeder v. Am. Econ. Ins. Co.*, 88 F.3d 892, 896 (10th Cir. 1996)). Here, Defendant did not need to take five months to "investigate" and "evaluate" this claim. It had already had ample opportunity to make its investigation before the jury rendered its verdict, and by its own admission had already evaluated the claim as worth only the cost of a defense. Doc. 17 at 8 ¶ 17.

On the other hand, as Defendant points out, Plaintiff does not cite a case finding that a five-month delay in payment is bad faith as a matter of law. Plaintiff relies on *Travelers Insurance Co. v. Montoya*, a case dealing with indefinite delay: rather than paying any proceeds of a life insurance policy, the insurance company filed an interpleader action and deposited the proceeds with the court registry. 1977-NMCA-062, ¶ 2, 90 N.M. 556, 557. The New Mexico Supreme Court found that these facts stated a claim for "unreasonable delay, in bad faith, in making payments pursuant to the insurance contract." *Id.* ¶ 5. Whether that plaintiff would succeed on the bad faith claim was a question that was not before the court "because it depends on the facts." *Id.* ¶ 12.

Certainly, Plaintiff is correct that a delay of any amount, if it is frivolous or unfounded, can constitute a breach of the insurer's duty to act honestly and in good faith. NMRA Civ. UJI 13-1702. But on these facts, a reasonable trial of fact could resolve the question in favor of either party. The Court cannot conclude that Plaintiff is entitled to a judgment on her claim of delay as a matter of law.

    C.    <u>Plaintiff Does Not Establish a UPCA Claim on the Undisputed Facts.</u>

Plaintiff contends that Defendant "has a general business practice" of engaging in "unfair and deceptive practice[s]" as defined by the New Mexico UPCA. Doc. 8 at 8. The UPCA provides:

> Any and all of the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited:

> A. misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;
>
> . . . .
>
> E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;
>
> . . . .
>
> M. failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage . . . .

N.M.S.A. § 59A-16-20.

Plaintiff argues that Defendant violated these provisions by (1) misrepresenting coverage; (2) failing to offer to resolve the property claim separately from the bodily injury claim; and (3) delaying five months after the verdict to issue payment. Doc. 8 at 8-9.

<u>Misrepresenting coverage.</u> Defendant argues that it did not misrepresent coverage. It denied the 2015 Policy Claim because the accident happened in 2016. Nevertheless, it issued Plaintiff a letter stating she had UMI coverage under her 2016 Policy and never denied the 2016 Policy Claim. Doc. 17 at 14. As previously explained, the Court will not consider Plaintiff's new arguments in her reply brief on this topic. Summary judgment in Plaintiff's favor is not appropriate based on the arguments and evidence Plaintiff submitted in her opening brief.

<u>Settling the property claim separately.</u> Plaintiff argues that the insurer had a duty to promptly settle the property damage claim without waiting on the resolution of issues surrounding the bodily injury claim. As Defendant points out, the section of the UPCA relied on by Plaintiff only applies if "liability has become apparent under one portion of the policy coverage." N.M.S.A. § 59A-16-20(M); *see* Doc. 17 at 15. Defendant argues that because it determined Plaintiff to be at fault for the accident, it was under no obligation to offer to settle

any part of her claim before the jury verdict. Doc. 17 at 15. In reply, Plaintiff argues that Defendant's reasons for determining Plaintiff to be at fault were frivolous and unfounded. Doc. 28 at 6-8. Again, Plaintiff did not make this argument in her Motion, because her Motion did not recognize that Defendant had determined Plaintiff to be at fault for the accident.[3]

<u>Five-month delay in payment</u>. Defendant argues that a delay in payment after a jury verdict does not violate the UPCA, because subsection M on its face applies only to "failing to *settle* an insured's claim." N.M.S.A. § 59A-16-20(M) (emphasis added); *see* Doc. 17 at 15. Plaintiff does not specifically respond to this argument in her reply brief, but instead argues that the delay in payment constitutes the tort of insurance bad faith. Doc. 28 at 9. As explained above, the issue of bad faith is generally one for the jury, and not appropriate for summary judgment on the facts presented by Plaintiff. The Court likewise cannot issue summary judgment for Plaintiff on her UPCA delay claim.[4]

## CONCLUSION

For the above stated reasons, Plaintiffs' Motion For Partial Summary Judgment Regarding Bad Faith And Violations Of The Unfair Claims Practices Act (Doc. 8) is **DENIED**.

---

[3] Based on the parties' versions of the facts presented in the papers, it appears that the reasons behind Defendant's claim handling determinations may have only been revealed to Plaintiff when Defendant filed its opposition to summary judgment in the present case. Nonetheless, the Court cannot consider the arguments raised for the first time in Plaintiff's reply brief.

[4] Because the Court denies summary judgment for independent reasons, it need not resolve Defendant's Rule 56 request to delay entry of summary judgment pending further discovery. *Cf.* Doc. 17-5.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent