**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**NICOLITA MONTOYA,**

      **Plaintiff,**

   **v.**                                           **Civ. No. 18-590 SCY/JFR**

**LOYA INSURANCE COMPANY, a
foreign corporation doing business in
New Mexico,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court on Defendant Loya Insurance Company's
Motion For Partial Summary Judgment Regarding Bad Faith And Violations Of The Unfair
Claims Practices Act, filed June 3, 2019. Doc. 71. Defendant Loya argues that Plaintiff was not
legally entitled to receive payment of any portion of a state jury verdict before the state court
entered a final judgment in that case. Because bad faith is typically a question for the jury and
because Defendant has not demonstrated that New Mexico bad-faith insurance law does not
apply between the time of a jury verdict and the final judgment, the Court rejects Defendant's
argument. In the alternative, Defendant argues that, because it payed Plaintiff prejudgment
interest, Plaintiff was not damaged by any delay in paying this verdict. The Court likewise
rejects this argument because, assuming Defendant failed to pay the jury verdict for frivolous
and unfounded reasons, prejudgment interest may not constitute the full measure of damages to
Plaintiff or adequately address the bad faith conduct alleged. Therefore, the Court DENIES
Defendant's Motion For Partial Summary Judgment.

# I.    BACKGROUND

## A.    Procedural History

Plaintiff filed this suit on May 17, 2018 in state court. Doc. 1-1 ("Compl."). On June 25, 2018, Defendant removed the case to federal court. Doc. 1. In her Complaint, Plaintiff contends that she was in a motor vehicle accident on October 3, 2016. Compl. ¶ 8. According to the Complaint, the accident was the fault of the other driver, who fled the scene. Compl. ¶¶ 9-10. Plaintiff made a claim for Uninsured Insurance Benefits with her auto insurance company, Defendant Loya. Compl. ¶ 11. Plaintiff filed suit against Defendant in state court in February 22, 2017. Compl. ¶ 20. On January 25, 2018, a jury rendered a verdict in favor of Plaintiff against Defendant in the amount of $23,742.82. Compl. ¶¶ 45-46. Defendant continued to delay paying the claim even after the verdict. Compl. ¶ 51. The failure to pay caused Plaintiff financial hardship. Compl. ¶ 32. The Complaint brings claims for Breach of Contract, Insurance Bad Faith, Unfair Insurance Claim Practices, and Unfair Trade Practices. Doc. 1-1 at 5-9.

Prior to the commencement of discovery, Plaintiff filed a Motion for Partial Summary Judgment Regarding Bad Faith and Violations of the Unfair Claims Practices Act, Doc. 8, and on March 11, 2019 the Court issued its Memorandum Opinion and Order denying Plaintiff's Motion, Doc. 57. The Court found that the parties agreed that, on October 3, 2016, Plaintiff was in a motor vehicle collision involving an unknown driver who fled the scene, and Plaintiff's property was damaged as a result. Doc. 57 at 3. Plaintiff made an Uninsured Motorist ("UM") claim under her auto insurance and reported the claim to her insurer. *Id.* The Court further found that the parties disputed the facts surrounding Plaintiff's claim and the reasons Defendant denied it. *Id.* at 3-4. Plaintiff asserted she filed suit in state court because Defendant denied her claim on the basis that "the damages claimed did not happen within the policy period," even though the accident was well within the policy period. *Id.* at 3. On the other hand, Defendant asserted that

Plaintiff opened *two* claims for the one accident. *Id.* at 3-4. Defendant denied one claim as being outside the policy limits and never denied the second claim, staying in communication with Plaintiff about the open claim throughout mediation and trial. *Id.*

The state-court case went to trial and the jury found Plaintiff 0% at fault and awarded $23,742.82 in damages on January 25, 2018. *Id.* at 3. Defendant did not pay the claim until June 29, 2018. *Id.* at 3. The parties disputed whether Plaintiff made multiple requests for payment during that period. *Id.* at 3-4. Defendant asserted that it delayed payment due to advice of counsel pending the resolution of disputed issues regarding costs, pre- and post-judgment interest, and a lien from First Recovery Group. *Id.* at 4.

The Court denied the motion for summary judgment due to this factual dispute and declined to consider the new arguments Plaintiff raised in her reply brief. *Id.* at 6-9. Most relevant for the present motion, the Court denied Plaintiff's motion for summary judgment based on the delay in payment after the jury verdict. The Court found that "whether defendant committed bad faith in delaying payment is a question for the jury." *Id.* at 10.

Although the Court denied Plaintiff's motion for summary judgment, it also rejected some of Defendant's arguments in the process. Defendant contended that it delayed payment because no contractual obligation to pay exists in the absence of a judgment. *Id.* Defendant also asserted that it was waiting on its counsel to instruct it "as to how, when and the amount to pay" in light of "ongoing issues regarding costs and pre- and post-judgment interest still being litigated" and the resolution of a medical services lien. *Id.* The Court disagreed with Defendant's reliance on *State Farm General Insurance Co. v. Clifton*, 1974-NMSC-081, ¶ 8, 86 N.M. 757, 759, and *Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1147 (D.N.M. 2010), which Defendant cited

3

in support of an argument that the delay was not bad faith as a matter of law. *Id.* at 10-11. The

Court explained:

> Defendant's asserted reasons for delay in this case—advice of counsel and the existence of a lien—are significantly less substantial than the reasons for delay presented in *Clifton*. Defendant does not explain why it could not have, for example, tendered the requested amount in exchange for an indemnification agreement placing the responsibility for resolving the lien on Plaintiff.
>
> . . . . [In addition,] Defendant did not need to take five months to "investigate" and "evaluate" this claim. It had already had ample opportunity to make its investigation before the jury rendered its verdict, and by its own admission had already evaluated the claim as worth only the cost of a defense.

*Id.*

Nonetheless, the Court concluded that a five-month delay in payment did not constitute

bad faith as a matter of law. *Id.* at 11. Although the New Mexico Court of Appeals has found that

"unreasonable delay, in bad faith, in making payments pursuant to the insurance contract" states

a claim for relief, *Travelers Ins. Co. v. Montoya*, 1977-NMCA-062, ¶ 5, 90 N.M. 556, 557, the

Court found the case unhelpful for purposes of summary judgment because the court of appeals

in that case indicated that a claim for bad faith "depends on the facts." *Id.* at 12. The Court

ultimately concluded: "Certainly, Plaintiff is correct that a delay of any amount, if it is frivolous

or unfounded, can constitute a breach of the insurer's duty to act honestly and in good faith.

NMRA Civ. UJI 13-1702. But on these facts, a reasonable trial of fact could resolve the question

in favor of either party." Doc. 57 at 11.

  B.  <u>Defendant's Motion for Partial Summary Judgment</u>

After the Court's Memorandum Opinion and Order, Defendant filed the present motion

for partial summary judgment, asking the Court to again consider the issue of the alleged

payment delay. Defendant elaborates on its argument that, under the relevant policy, it was

required to pay only "damages which an insured person is legally entitled to recover from the

owner or operator of an uninsured motor vehicle." Doc. 71 at 3. Because a jury verdict is not yet

a legal entitlement, Defendant argues that Plaintiff was not "legally entitled to recover" payment

before a final judgment was entered on the case. *Id.* at 2-3. In support of its motion, Defendant

presents the following facts, which are undisputed except where noted.

Defendant issued New Mexico Auto Policy No. 62 604581180 to Plaintiff, which

covered a 2002 Dodge Durango. Doc. 71 at 3 ¶ 1; Doc. 81 at 3. The policy provided Uninsured/

Underinsured Motorist Coverage and contained the following provision:

> Subject to the Limits of Liability, if you pay a premium for Uninsured/
> Underinsured Motorist Bodily Injury Coverage, we will pay for damages which
> an insured person is legally entitled to recover from the owner or operator of an
> uninsured motor vehicle or underinsured motor vehicle . . . .

Doc. 71 at 3 ¶ 2; Doc. 81 at 3.

Plaintiff was involved in a motor vehicle accident involving an unknown driver on

October 3, 2016. Doc. 71 at 3 ¶ 3; Doc. 81 at 3. On January 20, 2017, Defendant first learned of

a Medicaid lien in the amount of $169.54 for treatment related to the October 3, 2016 accident.

Doc. 71 at 3 ¶ 4; Doc. 81 at 3-4.[1] On September 20, 2017, Defendant received subsequent

correspondence that indicated the lien had not been paid. Doc. 71 at 4 ¶ 5; Doc. 81 at 3-4.

A state jury ultimately decided the outcome of Plaintiff's uninsured motorist claim,

awarding Plaintiff $23,742.82 through a Special Verdict entered on January 25, 2018. Doc. 71 at

4 ¶ 6; Doc. 81 at 3. On January 29, 2018, Plaintiff's counsel at the time, Richard W. Sutten,

attempted to negotiate a settlement of all of Plaintiff's claims, including the bad faith claims, the

jury verdict, and costs and prejudgment interest. He offered on behalf of Plaintiff to waive

---

[1] Defendant's undisputed fact does not set forth the amount of the lien. Doc. 71 at 3 ¶ 4.
Plaintiff's response calls attention to that amount. Doc. 81 at 3. In reply, Defendant criticizes
Plaintiff for failing to cite to record evidence in support of her assertion. Doc. 90 at 2. The
amount of the lien, however, is indicated in Defendant's own cited record evidence. Doc. 71-1.

mandatory post-judgment interest in exchange for full payment of the verdict and discretionary prejudgment interest and costs. Doc. 71 at 4 ¶ 7.[2] On January 31, 2018, counsel for Defendant, Leonard R. (Bud) Grossman, requested an extension to respond to Plaintiff's offer of settlement on the basis that pending questions remained regarding Plaintiff's bill of costs and the statutory limit on prejudgment interest. *Id.* ¶ 8. On February 7, 2018, Mr. Sutten filed Plaintiff's Costs Bill with the Court. *Id.* ¶ 9. On March 27, 2018, Mr. Sutten again indicated that Plaintiff sought 15% prejudgment interest and Mr. Grossman questioned the appropriateness of that amount. *Id.* ¶ 10. Within an hour, Mr. Grossman responded to Plaintiff, stating the law that governs prejudgment interest provides for 10%, not 15%. *Id.* ¶ 11. And, as of March 27, 2018, Defendant had not been informed if the Medicaid lien had been resolved. *Id.* ¶ 12.

Still not having received any payment as of June 6, 2018, Plaintiff filed a Motion for Entry of Judgement and other discretionary awards. *Id.* ¶ 14. On June 7, 2018, Plaintiff filed an Amended Costs Bill, which included additional costs the state court ultimately determined to be nonrecoverable pursuant to Rule 1-054, NMRA, such as mediation fees. *Id.* ¶ 15. On June 22, 2018, Defendant responded in opposition to Plaintiff's Motion for Entry of Judgment. *Id.* ¶ 16. A week later, on June 29, 2018, Defendant paid the amount of the jury verdict. *Id.* ¶ 17.[3]

Rather than file a reply in support of her Motion for Entry of Judgment, Plaintiff notified the state court on July 10, 2018, that the motion was ready to be heard. *Id.* ¶ 18. The state court held a hearing September 19, 2018 related to the discretionary award of Plaintiff's costs and

---

[2] Plaintiff does not dispute Defendant's Fact Nos. 7-12 and 14-23, but rather argues that they are immaterial. Doc. 81 at 4. Because that is a legal, not a factual dispute, the Court considers these facts undisputed.

[3] Defendant's Fact No. 17 states that "Plaintiff" paid this amount. The Court assumes this was an error and Defendant intended to state that it made this payment; the cited record evidence establishes that it was Defendant who paid this amount. *See* Doc. 8-3.

interest. *Id.* ¶ 19. Plaintiff prepared an order on the proposed form of judgment on October 2, 2018. *Id.* ¶ 20. In an October 22, 2018 order, the state court entered final judgment. *Id.* ¶ 23. It also rejected Plaintiff's demand for mediation fees and for prejudgment interest in excess of the statutory limit of 10%. *Id.* ¶¶ 21-22.

Ultimately, Defendant asserts that actions Plaintiff's counsel took in the underlying state case after the January 25 jury verdict caused the delay in payment of that verdict. Defendant's Fact No. 13 states that "Loya was aware of possible issues including Plaintiff's costs and interest that would need to be addressed by the Court." *Id.* ¶ 13 (citing Deposition of Jose Bolanos, Loya Insurance adjuster, Exhibit E, at 17:4-14). Defendant relies on the deposition testimony of Mr. Bolanos, who testified first in his capacity as Defendant's corporate representative under Federal Rule of Civil Procedure 30(b)(6), and subsequently testified in his individual capacity as a fact witness. In his capacity as the corporate representative, he testified as follows:

> Q. Regardless of any negotiations, it was Loya's obligation to pay that verdict, yes?
>
> . . .
>
> A. At that point, no.
>
> Q. Why not?
>
> A. Because there were legal ramifications, things that were pending still. There could have been an appeal filed. There could have been motions filed. There could have been court costs, interests that would need to be addressed.

Doc. 71-5 at 2.

Plaintiff disputes Fact No 13, citing to the Mr. Bolanos's testimony in his individual capacity as a fact witness. During this testimony Mr. Bolanos, who was also the adjustor responsible for handling Plaintiff's claim before the state trial took place, explained that he did not immediately take action to pay the adverse state jury verdict because he was waiting for

direction from Mr. Grossman. Doc. 81-3 at 5. He further testified that he did not know about any negotiations between Mr. Sutten and Mr. Grossman. Doc. 81-3 at 5. Defendant argues in reply that Mr. Bolanos' Rule 30(b)(6) testimony does not contradict his fact witness testimony: "Mr. Bolanos' lack of personal knowledge as to any particular matter does not mean that Loya also lacked such knowledge." Doc. 90 at 2. As set forth below in more detail, the Court construes these facts in favor of Plaintiff, the non-moving party.

C.    Plaintiff's Statement of Additional Facts

In response to Defendant's motion for partial summary judgment, Plaintiff provided a number of additional facts. She first asserts that Mr. Bolanos had no knowledge of any post-verdict settlement discussions between Mr. Grossman and Mr. Sutten and that Mr. Grossman did not otherwise advise Defendant of such discussions. Doc. 81 at 5 ¶¶ 1-2. Although Plaintiff's counsel, Mr. Sutten, sent Defendant's counsel an email four days after the jury verdict demanding payment of the verdict by February 2, 2018, Mr. Bolanos did not see that email or learn of any settlement discussions between Mr. Grossman and Mr. Sutten until April 11, 2019, the day before Mr. Bolanos' deposition. *Id.* ¶ 3. Thus, none of Mr. Bolanos' post-verdict claims handling decisions were made as a result of the post-verdict settlement negotiations. *Id.* at 6 ¶ 4.[4]

Regarding the timing of Defendant's duty to pay the state verdict, Plaintiff asserts that "Loya's insurance policy does not require entry of a judgment before payment of a claim based on a jury verdict." *Id.* ¶ 5. As support, Plaintiff cites the deposition of Chris Bennett, a Rule 30(b)(6) witness, as follows:

> Q. Okay. Is there any portion of that policy where it says a judgment must be entered to pay a claim on a jury verdict?

---

[4] Defendant does not dispute Plaintiff's facts 1-4, but argues they are immaterial. Doc. 90 at 2-3. The Court therefore considers these facts undisputed.

A. Not that I'm aware of.

Doc. 81-1 at 3. Although Defendant admits that "the policy does not say verbatim that a judgment must be entered to pay a claim," it disputes Plaintiff's fifth asserted fact based on the "legally entitled to recover" language in the policy. Doc. 90 at 3.

Plaintiff states in her sixth fact that "[t]here was no basis to appeal the [state court] jury's verdict determining liability and damages." Doc. 81 at 6 ¶ 6. Plaintiff supports this fact with citation to the deposition testimony of Mr. Bolanos, in his capacity as a 30(b)(6) witness, during which he testified that no one in Loya had any discussions about appealable errors. Doc. 81-2 at 2. Mr. Bolanos also testified that Mr. Grossman submitted a post-trial report indicating an appeal was unlikely. *Id.* at 4. He testified that no one that he knew of in Defendant's company wanted to appeal the verdict. *Id.* at 5-6. Defendant contests this fact, noting that it objected to this testimony and that "[t]he cited testimony does not establish that there was no basis to appeal the [state court] jury verdict, only that Mr. Bolanos was unaware of any basis" and "Mr. Bolanos testified that whether or not there were any appealable issue was the purview of Loya's defense counsel and that a final decision on the issue of an appeal had not yet been made." Doc. 90 at 4. At best, Defendant's cited evidence creates a factual dispute concerning whether or when Defendant decided not to appeal the verdict.

Mr. Grossman never requested or advised Defendant to pay the state court jury verdict. Doc. 81 at 6 ¶ 7.[5] Plaintiff's Fact 8 states that "Loya has no policies, procedures, training and processes relating to payment of jury verdicts," citing again to the testimony of Mr. Bennett as a 30(b)(6) witness. *Id.* ¶ 8. In response to Plaintiff's counsel's questions, Mr. Bennett testified:

---

[5] Defendant does not dispute Plaintiff's Fact No. 7, but argues it is immaterial. Doc. 90 at 6. The Court therefore considers this fact undisputed.

Q. Let's move on to topic 5, "The policies, procedure, training and processes relating to payment of jury verdicts, including the payment approval process and the authority levels of each person involved;" okay? Topic 5.

A. Yes, sir.

Q. And my understanding from Ms. Santos is that there is no documents to go with that?

A. Not that I'm aware of.

Q. So, no procedures, no protocols?

A. No, sir.

Doc. 81-1 at 3. Defendant disputes this fact, citing to further testimony of Mr. Bennett on questioning from his own attorney:

Q. I have a few questions just for follow up. And we'll start with the topic 5, the payment of jury verdicts. You were asked about policies and procedures, and there was a statement about, there is no policies or procedures. Would it be more accurate to say there's no written policy or procedure?

A. Correct.

Q. Is there actually a procedure that the adjusters follow when they have a jury verdict that is to be paid?

A. Request the instructions from defense counsel, and as part of the discussions of what the next steps or options are.

Q. Okay. And then, from there, do they need to get the appropriate authority in order to get that check issued?

A. Once we get the drafting instructions and the W-9 that are required, then the authority is taken care of and the check is issued.

Q. Okay. So, that's basically the pers - procedure or process?

A. Correct.

Doc. 90-1 at 3-4.

Drawing all factual inferences in favor of the non-moving party, the Court finds that Defendant's motion fails as a matter of law for the reasons explained below.

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

The issue presently before the Court is whether, drawing all reasonable factual inferences in favor of Plaintiff, a reasonable jury could find that Defendant's payment of the jury verdict several months after that verdict was entered, but before the state court entered a final judgment, constituted bad faith. The standard of review for this issue is not entirely clear. A plaintiff must show that a denial of a claim is frivolous or unfounded, but in cases of delay rather than denial, it appears that a simple reasonableness standard applies. The relevant New Mexico pattern jury instruction, UJI 13-1702, instructs that:

An insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded. An insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy.

NMRA Civ. UJI 13-1702; *see also Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 11, 293 P.3d 954, 958 "([I]n New Mexico, an insurer acts in bad faith when it denies a first party claim for reasons that are frivolous or unfounded."). This jury instruction is to be given in every first-party claim. *Id.* (use note). The rest of the instruction is bracketed:

[In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair [investigation] [evaluation] of the claim.]

[It may not unreasonably delay its notification to the policyholder that the claim will be paid or denied.]

[A failure to timely [investigate] [evaluate] [pay] a claim is a bad faith breach of the duty to act honestly and in good faith in the performance of the insurance contract.]

*Id.* The use note indicates that "[t]he bracketed second, third and fourth paragraphs are to be given where the plaintiff's cause of action and the evidence would justify a jury verdict on the basis of unreasonable delay in investigation or payment of a first-party claim." *Id.* (use note); *see also Cleveland*, 2013-NMCA-013, ¶ 13 (the insurer "must act reasonably under the circumstance to conduct a timely and fair investigation and evaluation").

"'Unfounded' is defined not as 'erroneous' or 'incorrect,' but rather the failure to exercise care for the interests of the insured, an arbitrary or baseless refusal to pay, lacking support in the language of the policy or the circumstances of the claim." *Cleveland*, 2013-NMCA-013, ¶ 11 (quoting *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 18) (alterations omitted). "'Unfounded' is synonymous with 'frivolous.'" *Id.* (quoting *Sloan*, 2004-NMSC-004, ¶ 18). "Frivolous or unfounded" appears to be a more difficult standard for plaintiffs to meet than "unreasonableness." As the present motion is about a delay rather than a denial, the

standard may be reasonableness rather than frivolousness. But because the parties do not brief the differences in these standards, and because Defendant's motion fails under either standard, the Court does not determine which standard applies in the present motion.

## III.    DISCUSSION

The Court first defines the scope of Defendant's motion for partial summary judgment, including which causes of action Defendant challenges in its motion. Standing alone, Defendants' first paragraph indicates that its motion is directed to only one cause of action. Doc. 71 at 1. Defendant states, "*One* of [Plaintiff's] claims pertains to Loya's payment of the jury verdict. *This* claim is based on undisputed facts and is ripe for judgment as a matter of law." *Id*. (emphasis added). In its caption and relief requested, however, Defendant refers to both Plaintiff's Bad Faith claim (Count II of Complaint entitled "Insurance Bad Faith") and Plaintiff's Unfair Claims Practices Act ("UCPA") claim (Count III of Complaint entitled "Unfair Insurance Claim Practices"). Doc. 1-1 at 6, 8 and Doc. 71 at 1, 20. As a result, the Court construes Defendant's motion as applying to both Count II and Count III of the Complaint. Further, Defendant makes clear that it is not seeking summary judgment related to allegations that it acted in bad faith or violated the UCPA before the state jury issued its verdict. Doc. 1-1 at 1 (noting it is only seeking summary judgment to the extent Plaintiff's claims "pertain[] to Loya's payment of the jury verdict"). Thus, Defendant's Motion for Partial Summary Judgment is directed at Plaintiff's claims that Defendant acted in bad faith and violated the UCPA by not paying the jury verdict earlier than it did.

In support of its motion, Defendant sets forth two avenues to relief. First, it argues it is entitled to partial summary judgment because, as a matter of law, its duty to pay the jury verdict did not arise until the state court entered a final judgment. Second, Defendant argues that because it paid Plaintiff prejudgment interest, any delay in paying the verdict did not harm

Plaintiff and so cannot constitute bad faith. Neither argument sufficiently supports Defendant's partial motion for summary judgment as a matter of law.

A.  Under New Mexico law, "legal entitlement" can arise prior to the entry of a judgment.

Defendant argues that it had no obligation to pay the state jury verdict until the state court entered a final judgment. Doc. 71 at 8. It points out that, under both its insurance policy and New Mexico's uninsured motorist statute, its duty to pay only arises once Plaintiff is "legally entitled to recover." Doc. 17-7 at 2; NMSA § 66-5-301(A).[6] A jury verdict, Defendant continues, does not give a party a legal entitlement to the proceeds—only a final judgment does. Doc. 71 at 8-13.

Defendant's argument fails to recognize that most legitimate insurance claims in New Mexico are paid in the absence of a final judgment; indeed, even in the absence of a lawsuit through which a final judgment could be obtained. New Mexico case law clearly provides that an insurance company that denies a first party claim for frivolous or unfounded reasons, or delays payment of a claim for reasons that are unreasonable under the circumstances, commits bad faith. *Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 11, 293 P.3d 954, 958; NMRA Civ. UJI 13-1702. Neither New Mexico's model jury instructions nor any New Mexico case law indicates that an insurer who frivolously denies or unreasonably delays a claim may nonetheless escape liability just because a final judgment has never been entered. In short, an insured need not file a lawsuit or obtain a final judgment before being "legally entitled to recover" on a claim.

The statutes and cases Defendant cites do not indicate otherwise. For instance, Defendant argues that "Rule 1-054 suggests that entitlement to damages or any other form of relief does not

---

[6] Because Defendant's policy and New Mexico law both require Defendant to pay Plaintiff when Plaintiff is "legally entitled to recover" and because Defendant's conduct is constrained by New Mexico law, the Court looks to New Mexico law to determine the meaning of "legally entitled to recovery" as that phrase is used in Defendant's policy.

vest until the entry of final judgment." Doc. 71 at 11. NMRA 1-054(B) states:

> Any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Court agrees with Defendant that NMRA 1-054(B) does not require a defendant to pay a jury verdict before a final judgment is entered. And, as even Plaintiff acknowledges, valid reasons may exist for a defendant to not immediately satisfy a verdict before a final judgment is entered. *See* Doc. 81 at 8 ("If there was an ongoing dispute concerning the UM verdict, Loya would have some cause to delay payment.").

Although NMRA 1-054(B) does not require a defendant to pay a jury verdict before a final judgment is entered, another statute or rule may require something that NMRA 1-054(B) does not. That is, nothing in NMRA 1-054(B) precludes the UCPA or some other New Mexico law from requiring an insurer to pay a verdict prior to final judgment in certain circumstances. Defendant's argument that NMRA 1-054(B) exclusively governs the timing of when a bad faith action accrues, if accepted, would provide insurance companies impunity for bad faith conduct committed before the commencement of a lawsuit. If "entitlement to damages or any other form of relief does not vest until the entry of final judgment" as Defendant argues, no amount of unreasonable delay prior to obtaining a judgment could amount to bad faith. As set forth above, this is not the law in New Mexico. On the flip side, even after a judgment is entered, an insurance company is not necessarily legally obligated to pay its insured's claim. This obligation could be delayed, for instance, if an insurance company has a valid reason to file a motion for a new trial, to file a motion to alter or amend the judgment, to move for relief from a judgment for a variety of reasons, or to appeal the judgment.

That a final judgment does not always equate to a legal entitlement to recovery is consistent with the New Mexico Supreme Court's recognition that the question of when an insured is legally entitled to recover on a claim does not have a clear answer. Instead of being fixed to one specific event, the New Mexico Supreme Court noted that "the phrase 'legally entitled to recover' seems something of a chameleon, varying with the facts and procedural context in which the need to define the phrase arises." *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 2007-NMSC-015, ¶ 13, 141 N.M. 387, 390. "In the abstract, the phrase seems potentially circular. That is, it may mean only that a court of competent jurisdiction has determined the plaintiff has a right to recover. Alternatively, it may mean that there is no statutory or other legal barrier to recovery." *Id.* ¶ 11. Thus, when an insured is "legally entitled to recover" is not always clearly defined. For instance, rather than instructing juries that the filing of a judgment triggers an insurance company's legal obligation to pay its insured's valid claim, New Mexico courts instruct juries that "in deciding whether to pay a claim, the insurance company must act reasonably under the circumstances . . . ." NMRA Civ. UJI 13-1702. In sum, a legal entitlement to recover after a jury verdict depends on whether a delay in payment would be "reasonable under the circumstances" rather than on some fixed event, such as the filing of a final judgment.

Finally, Defendant's argument fails because it would require the Court to conclude that the term "legal entitlement" as used in Defendant's policy has a different meaning pre-lawsuit than it does post-verdict. Clearly, a final judgment does not serve as a trigger to "legal entitlement" pre-lawsuit. Instead, legal entitlement accrues at the point an insurance company fails to "act reasonably under the circumstances . . ." NMRA Civ. UJI 13-1702. Defendant does not explain why this same standard should not continue to apply once an insured has filed a lawsuit or once a jury has entered a verdict. Granted, the adversarial nature of litigation may

affect what is considered unreasonable once a lawsuit is filed, but this does not mean that the reasonableness standard can no longer be applied. Defendant cites no case in which a court has held that this reasonableness standard ceases to apply once a lawsuit has been filed or once a verdict has been obtained. Absent any statutory language or New Mexico case supporting Defendant's position, the Court declines to find that the meaning of the words "legally entitled" change after a jury verdict to mean "once a judgment is entered."

Whether an insurer delayed paying an insured's claim in bad faith is typically a question for the jury. *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 586 (10th Cir. 1998). Of course, a trial court should grant summary judgment to a defendant insurance company if no reasonable jury could find that a delayed payment constituted bad faith. If Plaintiff's bad faith claim were based on Defendant's refusal to pay a 15% rate of prejudgment interest when the governing statute provided for no more than a 10% rate, for instance, Plaintiff's claim would fail as a matter of law. But Plaintiff does not assert that Defendant's delay in paying prejudgment interest constituted bad faith. Instead, she argues that Defendant did not contest the jury verdict and, as a result, had an obligation to pay the amount of that jury verdict while the parties engaged in negotiations and litigation over the appropriate amount of prejudgment interest. The Court addresses in Section E whether the premise of Plaintiff's argument is valid—that an insurance company must at least pay the uncontested amount of a claim while it litigates the amount it contests. Assuming the validity of this premise, however, whether the delay in paying the uncontested amount was "reasonable under the circumstances" is better left to a jury, as the Court indicated in its previous Memorandum Opinion and Order.[7]

---

[7] Because the Court rejects Defendant's argument that Plaintiff was not legally entitled to recover until the state court entered its judgment, the Court need not address Plaintiff's arguments based on Fed. R. Civ. P. 30(b)(6) and the mend-the-hold doctrine.

B.    Defendant is still subject to the duties of an insurance company under New Mexico law even if it "steps into the shoes" of the uninsured driver.

Defendant further asserts that "it is the judgment and not a verdict that makes Plaintiff 'legally entitled to recover' damages" because it "stepped into the shoes of the uninsured driver." Doc. 71 at 10-11. The Court understands Defendant's argument to be that because a plaintiff is not legally entitled to collect from an uninsured driver without obtaining a judgment, and because the defendant insurance company stands in the shoes of an uninsured driver, Plaintiff is not legally entitled to collect from Defendant (the uninsured driver's surrogate) without a judgment. Defendant's argument ignores the vast amount of law in New Mexico applicable to insurance companies, such as the duty of good faith and fair dealing, that does not apply to private motorists. And again, the logical extension of Defendant's argument is that insurance companies would have impunity for bad faith conduct committed before the commencement of a lawsuit—a time during which a plaintiff could not obtain a judgment. The Court disagrees with Defendant's position that this is the import of *State Farm Mut. Auto. Ins. Co. v. Maidment*, 1988-NMCA-060, 107 N.M. 568, 761 P.2d 446.

In *Maidment*, the New Mexico Court of Appeals recognized that, because an insurance company stands in the shoes of an uninsured driver when its insured sues for UM benefits, a plaintiff cannot recover punitive damages from the uninsured driver's estate. 1988-NMCA-060, ¶ 14. Accepting Defendant's argument, based on *Maidment*, a plaintiff with an undisputed uninsured motorist claim would have no legal entitlement to coverage unless she brought a lawsuit and obtained a judgment. But *Maidment* emphasizes that this is not the case in New Mexico: the insured does not have to "bring a direct action against the uninsured motorist before making a claim under the coverage." 1988-NMCA-060, ¶ 19. Nothing in *Maidment* indicates that, once the insured files her claim, she is not legally entitled to payment until she sues her

insurance company and obtains a judgment, no matter how valid and clear her claim might be. Indeed, such an extrapolation would run counter to well-established law in New Mexico that unreasonable delay in payment of a just claim is, itself, bad faith. *Travelers Ins. Co. v. Montoya*, 1977-NMCA-062, ¶ 5, 90 N.M. 556, 557; *see also* NMRA Civ. UJI 13-1702.

The other cases Defendant cites fare no better. *McAllaster v. Bruton*, for instance, did not address the period at issue in the present case: the time between a verdict and court judgment. 655 F. Supp. 1371 (D. Me. 1987). In *McAllaster*, an insured admitted he was partly at fault for an automobile accident but denied that he was one hundred percent at fault. *Id*. at 1374. The insured sued his insurance company and sought partial summary judgment on his insurance company's contractual liability to pay him benefits available under the underinsured motorist provisions of the policy. *Id*. at 1373. The court denied the plaintiff's motion because "there are a great number of factual issues that the jury must resolve before it can be decided whether [defendant insurance company] is legally liable for Plaintiff's injuries." *Id*. at 1374. It does not follow from *McAllaster*'s holding (that the liability issue should go to a jury) that liability only arises from a judgment.

Like *McAllaster*, the court in *Globe & Republic Ins. Co. v. Independent Trucking Co*., *Okl*., 387 P.2d 644, 646 (Okla. 1963), considered whether "under the facts and circumstances the 'legal liability' of [the defendant] has been shown." The court concluded "that it was established by the trial and judgment in the prior suit of Lawrence against [the defendant]." *Id*. Thus, the court grouped the verdict and judgment together, which does not support Defendant's argument that a judgment, not a jury verdict, establishes legal liability.[8]

---

[8] *Globe & Republic Ins. Co.* also highlights the unusual posture of the present case. The time between jury verdict and judgment is usually measured in days, not months. Thus, bad faith

Finally, in *State Farm Mut. Auto. Ins. Co. v. Girtman*, 147 S.E.2d 364, 365 (Ga. Ct. App. 1966), "[t]he sole question . . . [was] whether or not it is essential as a condition precedent to bringing suit against the insurer [for uninsured motorist proceeds] that suit must first be brought and judgment recovered against the known uninsured motorist." In other words, the question was whether Georgia would agree with states like New Mexico, which do not require an insured to obtain a judgment against the uninsured motorist before suing the insured's insurance company for uninsured motorist benefits. The answer to this question is irrelevant to when Plaintiff in the present case became "legally entitled to recover" on her uninsured motorist claim.

    C.    <u>An insurance company's duties to settle when liability is clear and act in good faith apply to all claims, including post-verdict claims.</u>

Plaintiff argues that, under the UCPA, an insured need not sue her insurer and obtain a final judgment before she is "legally entitled to recover" insurance proceeds on a claim. Doc. 81 at 7-9. The provision of the UCPA at issue, NMSA § 59A-16-20(E), states that not "attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear" is an unfair and deceptive practice. Defendant argues that § 59A-16-20(E) is not applicable here because that provision "clearly and unambiguously appl[ies] to the settlement of claims not the payment of a jury verdict." Doc. 90 at 7.

Defendant's argument is unpersuasive. It fails to recognize that parties often engage in post-verdict settlement discussions, just as the parties did in this case. *See* Doc. 71 at 4-5 (Defendant's undisputed facts setting forth settlement discussions between the parties after the jury entered its verdict). After the jury issued its verdict, the parties engaged in negotiation and litigation over what costs were taxable and what prejudgment interest rate should apply.

---

claims will rarely implicate a dispute over whether an insurance company must pay a jury verdict before judgment is entered.

Defendant provides no reason why § 59A-16-20(E) does not apply to these settlement discussions.[9]

Defendant has pointed to nothing in the language or history of § 59A-16-20(E) that indicates the New Mexico legislature intended to exclude an insurance company's duty to attempt "in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear" from applying in the period between a jury's verdict and a court's entry of a final judgment. Nor has Defendant cited to any case that limits § 59A-16-20(E) from reaching post-verdict settlement discussions. Absent any statutory language or New Mexico case supporting Defendant's position, the Court is reluctant to graft the limitation Defendant proposes onto § 59A-16-20(E).

Further, the Court finds that the absolute limitation Defendant proposes would be inconsistent with the public policy behind statutes such as § 59A-16-20(E). As the Supreme Court of Kentucky noted in determining that its version of UCPA continued to apply after the commencement of litigation, an alternative result would mean "insurance companies would have the perverse incentive to spur injured parties toward litigation, whereupon the insurance company would be shielded from any claim of bad faith. Such a reading would undermine the statute's fundamental purpose by allowing insurance companies to engage in whatever sort of practice—fair or unfair—they see fit to employ." *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 517 (2006). The import of Defendant's argument that § 59A-16-20(E) ceases to apply after a jury enters its verdict is similar. Accepting Defendant's argument would allow insurance companies

---

[9] Defendant makes no argument that the duty to settle under the UCPA automatically ceases to apply once a lawsuit is filed and a claim becomes a litigated claim. Also, neither party addresses the statute's requirement that the unfair practice must be "knowingly committed or performed with such frequency as to indicate a general business practice." NMSA § 59A-16-20.

to refuse, for frivolous and unfounded reasons, to pay a valid claim after a jury verdict. Again, Defendant has failed to provide any authority that convinces the Court that the reach of § 59A-16-20(E) does not extend past the time of a jury verdict. The Court thus rejects Defendant's argument that § 59A-16-20(E) has no bearing on whether it engaged in post-verdict bad faith conduct.

D.      Defendant's reliance on its counsel does not insulate it from bad-faith claims.

For the first time in its reply, Defendant argues that the Court should view the handling of litigated claims differently than the handling of non-litigated claims and that its attorney's litigation conduct cannot serve as the foundation for an insurance bad faith lawsuit. Doc. 90 at 7 ("the court has recognized the that there is a distinction between the handling of non-litigated claim and a litigated claim, when examining an insurers' actions."); *id.* at 9 ("Loya's purported delay was in response to its counsel's directive to wait until judgment had been entered because he was litigating post-trial matters and engaged in settlement discussions."). The Court agrees that the adversarial nature of litigation alters the dynamics between an insurance company and an insured, including the dynamics of settlement discussions once a lawsuit has been filed. This does not mean, however, that an insurance company's obligation to act in good faith comes to a halt once its insured files a complaint—a topic Judge Lynch addressed in the first part of his opinion in *Sinclair v. Zurich Am. Ins. Co.*, 129 F. Supp. 3d 1252 (D.N.M. 2015), the principal case on which Defendant relies.

There, Judge Lynch concluded that New Mexico courts would recognize that:

[1] an insurer's duty to act in good faith does not end when its insured files suit against it although the insurer and insured begin an adversarial relationship at that time . . .

[2] an insurer has an obligation to timely reassess its initial decision to deny coverage based upon information received subsequent to the initial decision, even if that information is received after suit is filed . . . [and]

> [3] an insurer can be held liable for violations of the Unfair Insurance Practices
> Act that occur after the filing of suit.

*Sinclair*, 129 F. Supp. 3d at 1257. Although Defendant extensively cites to *Sinclair*, it does not

challenge these conclusions.[10]

Like Judge Lynch, the Court believes that New Mexico courts would only allow

"evidence of an attorney's litigation conduct to be admissible as evidence of bad faith in rare

cases involving extraordinary facts." *Sinclair*, 129 F. Supp. 3d at 1258. The timing of payment to

an insured, however, is inherently a decision for the insurance company rather than simply part

of an attorney's conduct during litigation. The decision of when an insured should be paid is

unlike attorney litigation decisions about what discovery should be requested, what witnesses

should be called, what questions those witnesses should be asked, and what motions should be

filed. Nor is it like the *litigation* conduct the Tenth Circuit found inadmissible in *Timberlake*

*Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995). That *litigation* conduct

consisted of (1) a letter from an insurance company's attorney to its adjuster opining that the

plaintiff insured was "squirming pretty good"; (2) the decision to file a counterclaim against the

plaintiff; and (3) the decision to join a third-party as a necessary party. *Id*. at 339 & n.5. Unlike

these types of decisions an attorney makes in the course of litigation, the timing of when to pay a

claim is a decision for the insurance company. Thus, although the Court agrees that an attorney's

litigation conduct generally cannot serve as the foundation for an insurance bad faith claim,

---

[10] Defendant cites to this case in Doc. 71 at pages 13 and discusses it at length in Doc. 90 at pages 7-9. But because Defendant does not argue that an insurer's litigation conduct is universally irrelevant to the issue of bad faith, the Court need not delve into the many complex considerations related to the questions of when an insurer's litigation conduct is relevant to the issue of bad faith, and if it is, specifically what conduct is relevant. Instead, the Court limits its analysis to the issues the parties have briefed.

drawing all factual inferences in Plaintiff's favor, the Court concludes that Plaintiff's bad faith claim is not founded on *litigation conduct* of Defendant's attorney.

The Court also rejects Defendant's argument for the same reason Plaintiff urges the Court to reject it. Plaintiff asserts that because Mr. Grossman owes no duty of care to his litigation adversary (*i.e.*, Plaintiff during the state court case), Defendant's reliance on him to advise when payment should be made was an impermissible delegation of its duty of good faith to a party who had no such duty. Doc. 81 at 11-12; Doc. 81-3 at 3 (noting that the claims adjustor handling her case, Mr. Bolanos, testified that his decisions were solely based on waiting for Mr. Grossman to advise him what to do.). Mr. Bolanos, Plaintiff asserts, neither made any effort to pay the claim when he received the jury verdict nor made any effort to see how that failure affected Plaintiff, his insured. Doc. 81-3 at 3.

The Court agrees with Plaintiff that Defendant cannot delegate its fundamental duties as an insurer to Mr. Grossman, who does not owe Plaintiff a duty of good faith and fair dealing. Doc. 81 at 11. Plaintiff correctly argues that, in certain situations, New Mexico has found the duty of good faith and fair dealing to be non-delegable and holds an insurance company liable for the conduct of third parties if it has so attempted to delegate. In *Jessen v. National Excess Insurance Co.*, the New Mexico Supreme Court held that "[t]he duty of good faith dealing by parties to an insurance contract has been recognized as a nondelegable duty." 1989-NMSC-040, ¶ 18, 108 N.M. 625, 629.[11] In that case, the insurance company was not relieved of liability for breaching the duty to undertake a proper investigation by having an independent contractor perform the investigation. *Id.* ¶¶ 18-20. In *Dellaira v. Farmers Insurance Exchange*, the New

---

[11] *Jessen* was disapproved of on other grounds related to the standard for the imposition of punitive damages by *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 25 & n.6, 118 N.M. 203, 210.

Mexico Court of Appeals explained: "An insurer owes a duty of good faith and fair dealing to its insured. This duty is non-delegable. It follows that an insurer cannot avoid or dissolve this duty by delegating to third parties its essential function of making sure that claims for policy benefits are handled and determined fairly, promptly, and honestly." 2004-NMCA-132, ¶ 11, 136 N.M. 552, 555 (citations omitted). The *Dellaira* court allowed a claim to go forward against an insurance company even though a third party "ha[d] control over and ma[d]e the ultimate determination regarding the merits of an insured's claim." *Id.* ¶ 14. The court reasoned that "[a]n entity that controls the claim determination process may have an incentive similar to that of an unscrupulous insurer to delay payment or coerce an insured into a diminished settlement." *Id.*

The Court's recognition that an insurer may not abdicate its responsibilities to its insured by simply delegating them to an attorney, however, does not mean that an attorney's advice is irrelevant. Defendant's argument that it cannot be held responsible for its attorney's decision to delay payment of the verdict is best framed as an advice-of-counsel defense. *Cf.* Doc. 90 at 9 ("This is not a delegation of its duty, as Plaintiff suggests, but an integral part of the defense Loya is entitled to."). This defense, however, does not provide Defendant a path to partial summary judgment for several reasons.

First, Defendant did not raise it as a basis for partial summary judgment. As the Court earlier noted in denying Plaintiff's motion for partial summary judgment, the Court need not consider an argument made for the first time in reply. Doc. 57 at 9, 13 n.3. Second, even in its reply, Defendant did not develop this argument, which consisted of a single sentence on page 9 of its reply and another citation to *Sinclair*. Third, while the Court agrees with Defendant's interpretation of *Sinclair*, *Sinclair* provides it no help. Neither *Sinclair* nor the parties address whether an insurance company may rely on an advice-of-counsel defense in New Mexico, what

the elements of such a defense would be, or whether the claims adjustor has any duty to evaluate the advice with the insured's interests in mind when making decisions such as when to pay on a claim.[12] Fourth, the briefs do not squarely address whether an attorney's failure to communicate that his client should pay a claim constitutes advice of counsel on which the client can rely as an affirmative defense.

E.    A reasonable jury could find that Defendant's stated reasons for the payment delay do not satisfy its duty of good faith.

Finally, Defendant argues that its delay cannot have been bad faith on its part because the delay was of Plaintiff's own making—asking for unsupported costs and prejudgment interest in an amount not permitted by statute. Doc. 71 at 14-17. In addition, Plaintiff also had an outstanding Medicaid lien in the amount of $169.54 which was not resolved at the time of the jury verdict. *Id.* at 17-18. Plaintiff argues that New Mexico law, specifically NMSA § 59A-16-20(M), prohibits an insurance company from using negotiations about costs and interest to influence settlement of an uninsured motorist claim. Doc. 81 at 9. Section 59A-16-20(M) prohibits an insurance company from "failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage." In its reply, Defendant argues that § 59A-16-20(M) does not apply because it "states that settlement under one form of coverage (i.e. property damage) cannot be used to influence settlement under another form of **coverage**,"

---

[12] The Court has been unable to find authority on from New Mexico state courts on the advice-of-counsel issue presented here, but American Jurisprudence recognizes that "[w]hen an insurer follows an attorney's advice in not settling or in rejecting a claim, such reliance by the insurer is uniformly recognized as at least one factor to be considered in determining whether the insurer acted in bad faith." 16 Am. Jur. Proof of Facts 3d 419 § 12 (July 2019 update). In addition, in a case repeatedly cited by Plaintiff (Doc. 8 at 6; Doc. 81 at 12-13), Judge Black held that advice-of-counsel is not a complete defense, but that it is certainly relevant evidence in determining whether the insurer acted in good faith. *Padilla v. Western Heritage Ins. Co.*, No. 03-cv-695, Doc. 62 at 12 (D.N.M. May 24, 2004).

and there is only one form of coverage at issue in this case—UM benefits. Doc. 90 at 8 (emphasis in original).

Both parties' arguments somewhat miss the mark. Defendant does not address the larger question of whether, under New Mexico law, an insurance company must pay a partial, but undisputed, amount of a claim while continuing to litigate the disputed portions of the claim. Plaintiff, for her part, does not cite any instance in which a New Mexico court has applied § 59A-16-20(M) to require immediate payment of an undisputed claim amount when the disputed amount is part of the same coverage. Nor does Plaintiff cite any New Mexico case discussing to what extent an insurance company must piecemeal a settlement and make partial payments to satisfy its duty of good faith. An insured could argue that the larger undisputed amount of a claim should not be held hostage to the smaller disputed amount. This argument would have appeal in certain situations. For instance, an indigent insured should not be told that, until she pays her Medicaid lien, she cannot receive the money she needs to pay her Medicaid lien.[13] On the other hand, an insurance company has an argument that it cannot be expected to perpetually pay claims in a piecemeal fashion under threat of a bad faith finding should too long a delay lapse between payments. *See Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218 (3d Cir. 2000) (providing a thoughtful discussion of this issue under Pennsylvania law). The parties have not briefed this issue. Instead, Plaintiff appears to assume that Defendant had a duty

---

[13] The Court understands that in the present case the alleged Medicaid lien was only $169.54. Although the parties use the word "lien," Defendant did not submit evidence that a lien was actually filed, instead attaching a series of demand letters from First Recovery Group concerning the amount in question. *See* Doc. 71-1. In any event, to the extent Defendant was concerned about its exposure for this amount, the Court has no evidence Defendant attempted to eliminate its exposure by offering to set the lien amount aside, seeking to deposit that amount with the court, requesting an indemnification agreement from the Plaintiff, or paying the lien directly so that it could then pay the remainder of the verdict to Plaintiff.

to pay the uncontested portion while litigating that contested portion and Defendant appears to assume that it had no duty to pay the uncontested portion while it was litigating the contested portion. Because the parties did not brief the law on this issue, the Court does not now consider it. The Court merely finds that Defendant has not demonstrated that summary judgment is appropriate as a matter of law.

F.     Prejudgment interest does not excuse an insurer's bad faith.

As an alternative to its no legal entitlement argument, Defendant argues that Plaintiff was not "damaged" by any delay in payment because she received prejudgment interest from March 2017 until entry of judgment. Doc. 71 at 19. Plaintiff does not respond to this argument, but it remains Defendant's burden to show its entitlement to judgment as a matter of law based on undisputed facts. *Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1207, 1252 (D.N.M. 2014) ("[A]lthough the local rules provide that a party's failure to respond to a motion for summary judgment or to a motion to dismiss for failure to state a claim is deemed consent to the Court granting the motion, the Court will nonetheless rule substantively on such motions and generally does not grant dispositive motions on procedural defaults alone.").

Defendant does not cite any authority for the proposition that an award of interest excuses an insurer's bad faith. The Court predicts that the New Mexico Supreme Court would not agree with Defendant's position. In New Mexico, a jury finding of "[b]ad faith supports punitive damages upon a finding of entitlement to compensatory damages." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 6, 135 N.M. 106, 110. In particular, "[b]y refusing or delaying payment on a claim for reasons that are frivolous or unfounded, the insurer has acted with reckless disregard for the interests of the insured; such reckless disregard supports a claim for punitive damages." *Id.* ¶ 18. In other words, an element of a bad faith cause of action is one of punishment or deterrence. On the other hand, the purpose of prejudgment interest is

compensation, not punishment. *Pub. Serv. Co. of New Mexico v. Diamond D Const. Co.*, 2001-NMCA-082, ¶ 56, 131 N.M. 100, 116, 33 P.3d 651, 667 ("The purposes of both prejudgment and post-judgment interest differ from the purposes of punitive damages."); *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 (1983) ("The traditional view, which treated prejudgment interest as a penalty awarded on the basis of the defendant's conduct, has long been criticized on the ground that prejudgment interest represents 'delay damages' and should be awarded as a component of full compensation."). The Court thus predicts that New Mexico would find that an award of prejudgment interest does not preclude Plaintiff from bringing a bad-faith claim for the same period of delay covered by the prejudgment interest.

## CONCLUSION

For the above stated reasons, Defendant Loya Insurance Company's Motion For Partial Summary Judgment Regarding Bad Faith And Violations Of The Unfair Claims Practices Act (Doc. 71) is **DENIED**.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent